UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PAMELA WILLIAMS**,

    Plaintiff,

v.     Case No. 8:23-cv-1191-WFJ-JSS

**EXPERIAN INFORMATION SOLUTIONS, INC.**, et al.,

    Defendants.
_____/

## ORDER

Before the Court is Experian Information Solutions, Inc.'s ("Defendant") Motion to Compel Arbitration (Dkt. 27). Pamela Williams ("Plaintiff") has not responded, rendering Defendant's Motion unopposed. *See* Local Rule 3.01(c). Upon careful consideration, the Court grants Defendant's Motion and stays this case.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In considering whether to compel arbitration, courts consider three factors: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*,

No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

## DISCUSSION

Defendant's undisputed factual assertions demonstrate a need to compel arbitration—at least on the threshold issue of arbitrability.

In 2017, Plaintiff enrolled in CreditWorks, a credit monitoring service affiliated with ConsumerInfo.com, Inc. ("CIC"), which itself does business as Experian Consumer Services ("ECS"). Dkt. 27-1 at 2–3. This enrollment required Plaintiff to affirmatively accept CIC's "Terms of Use Agreement" (the "Agreement") *Id.* at 3–4. Among other things, the Agreement contained an arbitration provision (the "Arbitration Provision"). *Id.* at 17–19.

Thereunder, "ECS and [Plaintiff] agree[d] to arbitrate all disputes and claims between [them] arising out of this Agreement directly related to the Services or Websites, except any disputes or claims which under governing law are not subject

to arbitration." *Id.* at 17–18. The Arbitration Provision defined "ECS" to "include our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries" of certain services, websites, or information. *Id.* at 18. In addition, the Arbitration Provision provided that "[a]ll issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term [.]" *Id.* at 19.

This Agreement is a valid written contract providing for arbitration. When deciding whether two parties have agreed to arbitration, courts generally apply state law principles governing the formation of contracts. *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Florida law, a valid contract requires an "offer, acceptance, consideration," *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004), and mutual assent to the terms of the agreement, *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989). Here, there is no dispute that any of these elements are absent, and Defendant has asserted uncontested facts that ostensibly prove their existence. *See generally* Dkt. 27. What is more, multiple district courts across the country have found these elements when examining the issue of contract

3

formation within the context of CIC and CreditWorks' signup process. *See Cimillo v. Experian Info. Sols., Inc.*, No. 21-CV-9132 (VB), 2023 WL 2473403, at *6 (S.D.N.Y. Mar. 13, 2023) (finding that "when plaintiff registered for CreditWorks, she agreed to the July 2019 [Terms of Use], including its Arbitration Agreement"); *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-CV-00806-DAD-JDP, 2023 WL 3030990, at *5 (E.D. Cal. Apr. 21, 2023) (finding that the CreditWorks "website provided sufficient notice of the Terms of Use Agreement, and therefore that there was a binding arbitration agreement between plaintiffs and ECS"); *Tadic v. Experian Info. Sols., Inc.*, No. 1:18-CV-2911-TWT, 2019 WL 11499103, at *2 (N.D. Ga. Mar. 13, 2019) (finding that the plaintiff "agreed to the Terms and Conditions because she had clear notice of [them], and she was required to 'affirmatively acknowledge the agreement before proceeding'").[1]

An arbitrable issue exists under the Agreement. As the Supreme Court has explained:

> Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. When a dispute arises, the parties sometimes may disagree not only about the merits of the dispute but also about the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute. Who decides that threshold arbitrability question? Under the Act and this Court's cases, the question of who decides arbitrability is itself a question of contract. The

---

[1] Defendant may directly enforce the Arbitration Provision because: (1) it is uncontested that Defendant is, at the very least, an affiliate of ECS; and (2) the Arbitration Provision explicitly defines ECS to include affiliates. Dkt. 27-1 at 18.

4

> Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.
>
> Even when a contract delegates the arbitrability question to an arbitrator, some federal courts nonetheless will short-circuit the process and decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is "wholly groundless." The question presented in this case is whether the "wholly groundless" exception is consistent with the Federal Arbitration Act. We conclude that it is not. The Act does not contain a "wholly groundless" exception, and we are not at liberty to rewrite the statute passed by Congress and signed by the President. When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28, 202 L. Ed. 2d 480 (2019) (internal citations omitted). In the instant case, the Arbitration Provision unambiguously delegates the threshold issue of arbitrability to the arbitrator. Dkt. 27-1 at 19. Thus, although the Court believes that Plaintiff's claims may not be subject to the Arbitration Provision,[2] the Court must leave this issue to the arbitration process.

Finally, the Court notes that Defendant has not waived its arbitration rights. "The Court conducts a two-part inquiry to determine whether a party has waived its arbitration rights." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th

---

[2] Plaintiff states two Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* claims against Defendant. Dkt. 1 at 11–17. The Arbitration Provision explicitly provides that "for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to information contained in your consumer disclosure or report . . . shall not be governed by this agreement to arbitrate." Dkt. 27-1 at 18.

Cir. 2018). The first part focuses on "the totality of the circumstances" and asks whether the nonmoving party has "substantially invoked the litigation machinery prior to demanding arbitration." *Id.* (citations and internal quotations omitted). The second part focuses on the prejudice to the nonmoving party and considers, among other things, the expense incurred by the moving party's participation in the litigation process. *Id.* (citations and internal quotations omitted). Here, Defendant has evinced no intent to litigate prior to asserting its arbitration rights. There is therefore no prejudice to Plaintiff, and consequently no waiver by Defendant.

## CONCLUSION

The Court compels arbitration under the Agreement and stays this case.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion to Compel Arbitration (Dkt. 27) is **GRANTED**.

(2) The instant case is stayed pending resolution of the arbitration process.

**DONE AND ORDERED** at Tampa, Florida, on December 4, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record